UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PHILLIP WARREN DUFFEY,

       Petitioner,

v.                        Case No: 2:15-cv-149-FtM-29MRM

FLORIDA ATTORNEY GENERAL and
SECRETARY, DOC,

       Respondents.[1]

_____

## OPINION AND ORDER

This matter comes before the Court upon an amended petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Phillip Warren Duffey ("Petitioner"), a prisoner of the Florida Department of Corrections (Doc. 7, filed Mar. 23, 2015). Petitioner attacks the convictions and sentences entered against him by the Twentieth Judicial Circuit Court in Lee County, Florida for sexual battery on a child less than twelve years of age, sexual activity with a child, and child neglect.  Id.  Respondent filed a limited response to the petition, arguing that it had been

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004) (citations omitted).  In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections.  Therefore, the Florida Attorney General will be dismissed from this action.

untimely filed (Doc. 13).  Upon review of the petition and Petitioner's reply (Doc. 15), the Court ordered Respondent to address the petition on its merits (Doc. 16).  Respondent complied (Doc. 22), and Petitioner filed a second reply (Doc. 26). The case is now ripe for review.

Petitioner raises eight claims in his petition.  He asserts that: (1) defense counsel ("Counsel") was ineffective for failing to conduct a reasonable investigation into the expiration of Petitioner's speedy trial time under Florida law; (2) Counsel was ineffective for failing to object to the partial closure of the courtroom during the testimony of the minor victim of sexual abuse; (3) Counsel was ineffective for failing to request a special jury instruction regarding the admission of evidence of Petitioner's prior illegal activity; (4) Counsel was ineffective for failing to call a favorable witness at trial; (5) Counsel was ineffective for failing to seek severance of his charges; (6) the evidence was insufficient to support his conviction for child neglect; (7) Counsel was ineffective for waiving Petitioner's statutory speedy trial rights without his consent; and (8) fundamental error occurred when the jury returned a verdict for an offense that was not charged in the charging document (Doc. 7 at 5-35).

Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be either dismissed or denied.  Because the Court may resolve the Petition

on the basis of the record, an evidentiary hearing is not warranted. See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.   Background and Procedural History[2]

On March 27, 2001, Petitioner was charged by amended information with sexual battery on a child less than twelve years of age, contrary to Florida Statute § 794.011(2) (count one); sexual activity with a child between the ages of twelve and eighteen by a person in a position of familial or custodial authority, contrary to Florida Statute § 794.011(8)(b) (count two); and neglect of a child, contrary to Florida Statute § 827.03(3) (count three) (Ex. 1).  The victim in each count was Petitioner's daughter, BD. Id.

After a trial (Ex. 2), the jury found Petitioner guilty as charged (Ex. 3).  He was sentenced to life in prison on count one, to 237 months in prison on count two, and to sixty months in prison on count three.[3]  All sentences were to run consecutively (Ex. 7

---

[2] Unless indicated otherwise, citations to exhibits or appendices are to those filed by Respondent on March 4, 2016 (Doc. 25).  Citations to the trial transcript, located in exhibit two, will be cited as (T. at __).

[3] Petitioner's sentences were subsequently corrected to reflect his eligibility for parole after completion of the twenty-five year minimum mandatory term. See Duffey v. State, 874 So. 2d 1242 (Fla. 2d DCA 2004).

at ¶ 1).  Florida's Second District Court of Appeal *per curiam* affirmed Petitioner's convictions and sentences (Ex. 5); <u>Duffey v. State</u>, 840 So. 2d 233 (Fla. 2d DCA 2002).

On October 13, 2004, Petitioner filed a motion pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure in which he raised thirteen claims ("Rule 3.850 motion") (Ex. 6).  The post-conviction court summarily denied the motion (Ex. 7).  The appellate court affirmed in part, and reversed in part, noting that the post-conviction court had, in reaching its opinion, impermissibly relied on statements of fact in Petitioner's initial brief on appeal instead of the pleadings or the trial transcript (Ex. 8); <u>Duffey v. State</u>, 982 So. 2d 1285 (Fla. 2d DCA 2008).  After holding an evidentiary hearing (Ex. 10), the post-conviction court again denied the Rule 3.850 motion (Ex. 11).  Florida's Second District Court of Appeal affirmed *per curiam* (Ex. 12).

On July 24, 2012, Petitioner filed a second Rule 3.850 motion (Ex. 13).  The post-conviction court denied the motion, and Florida's Second District Court of Appeal *per curiam* affirmed (Ex. 14; Ex. 15); <u>Duffey v. State</u>, 136 So. 3d 600 (Fla. 2d DCA 2014).

Petitioner filed the operative amended petition on March 23, 2015 (Doc. 1).

## II.  Legal Standards

### A.   The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  White v. Woodall, 134 S. Ct. 1697, 1702 (2014).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Notably, a state court's violation of state law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision.  White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362,

412 (2000)).  That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case.  White, 134 S. Ct. at 1706 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable

manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." Knowles, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented

in the state-court proceeding") (dictum); Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013) (same).

## B.    Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id. This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13 (citing Cullen v. Pinholster, 563 U.S. 170 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as

of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

## C.   Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v. Henry, 513 U.S. 364, 365 (1995) (citing Picard v. Connor, 404 U.S. 270, 275-76 (1971)). The petitioner must apprise the state court of

the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998).

In addition, a federal habeas court is precluded from considering claims that are not exhausted and would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. Coleman, 501 U.S. at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged constitutional violation. Spencer v. Sec'y, Dep't of Corr., 609

F.3d 1170, 1179-80 (11th Cir. 2010).  To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  Wright v. Hopper, 169 F.3d 695, 703 (11th Cir. 1999); Murray v. Carrier, 477 U.S. 478 (1986).   To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different.  Crawford v. Head, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]"  Murray v. Carrier, 477 U.S. 478, 479-80 (1986).  Actual innocence means factual innocence, not legal insufficiency.  Bousley v. United States, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense.  Schlup v. Delo, 513 U.S. 298, 327 (1995).  "To be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial."  Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324).

### III. Analysis

**A.   Claim One**

Petitioner alleges that Counsel was ineffective for failing to adequately investigate the expiration of his speedy trial rights under Florida law (Doc. 7 at 5).  Specifically, Petitioner asserts that he was arrested in 1995 on three separate cases of sexual battery and lewd and lascivious acts. Id. at 6.  He claims that one of the victims in his 1995 arrest was his daughter – the same victim as in the present case. Id.  Petitioner argues that the 1995 arrest was based upon the same allegations as the instant case and that the state was precluded from filing charges based upon the 1995 sexual battery of his daughter after 175 days – the expiration of Petitioner's speedy trial period under Florida law.[4] Id. at 6.   Presumably, Petitioner alleges that he suffered prejudice from Counsel's failure to adequately investigate this

---

[4] Florida's speedy trial rule requires the State to bring a defendant to trial within a specified time from the date the defendant is taken into custody as a result of the conduct or criminal episode that gave rise to the crime charged. See Fla. R. Crim. P. 3.191(d); State v. Williams, 791 So.2d 1088, 1091 (Fla. 2001).  Custody begins when a person is either arrested or served with a notice to appear in lieu of physical arrest. See Fla. R. Crim. P. 3.191(d).  In Florida, the speedy trial rule requires the State to bring a defendant to trial on a felony within 175 days where the defendant has not demanded a speedy trial or waived his speedy trial rights. See Fla. R. Crim. P. 3.191(a)(1).

defense because the case for which he is currently incarcerated would have been discharged as violative of his speedy trial rights.

Petitioner raised this claim in his first Rule 3.850 motion, and the post-conviction court summarily denied the claim without addressing Petitioner's assertions regarding his 1995 arrest (Ex. 7 at ¶ 4). Petitioner appealed, and the appellate court remanded, noting:

> Mr. Duffey's motion sought postconviction relief from his judgment and sentences for capital sexual battery, sexual activity with a child, and child neglect. Each charge involved Mr. Duffey's abuse of his daughter. In claim 1(a), Mr. Duffey claimed that he was initially arrested in 1995 based on allegations he had sexually abused his daughter when she was eleven, and therefore speedy trial on the capital sexual battery charge ran from that date and was unaffected by the State's failure to pursue the prosecution to conclusion at that time. See State v. Williams, 791 So. 2d 1088, 1091 (Fla. 2001) ("[T]he speedy trial time begins to run when an accused is taken into custody and continues to run when the State voluntarily terminates prosecution, before formal charges are filed."). In its response, the State argued that the 1995 arrest was for unrelated charges against two other victims and that Mr. Duffey was not arrested at that time for the allegations regarding his daughter. To support this assertion, the State attached a portion of an investigation report. The report reveals that Mr. Duffey was arrested in 195 based upon allegations made by Mr. Duffey's two nieces that involved the nieces and Mr. Duffey's daughter. As to the daughter, the report states, "A determination was made from the facts presented that there was insufficient evidence to prosecute at this time." The report does not indicate, however,

whether this determination was made before or
after Mr. Duffey's arrest.  Thus the report
does not conclusively refute Mr. Duffey's
assertion that he was arrested for capital
sexual battery against his daughter in 1995
and that speedy trial ran from that date.  We
therefore reverse the summary denial of this
claim.

Duffey, 982 So. 2d at 1286-87.  On remand, the state post-

conviction court held an evidentiary hearing at which Petitioner

and the Director of Central Records for Lee County testified (Ex.

10).  Afterwards, the post-conviction court denied the claim,

specifically finding that Petitioner had not been arrested in 1995

for sexually molesting his daughter:

> In the first allegation, **1(a),** Defendant
> alleged that trial counsel was ineffective for
> waiving Defendant's right to a speedy trial
> against Defendant's expressed instructions
> not to waive his rights, and that counsel
> failed to investigate or present evidence that
> Defendant had been previously arrested for one
> count of capital sexual battery on the same
> victim in this case, [BD], on July 6, 1995,
> which the State did not prosecute because of
> insufficient evidence.  This issue was set for
> hearing because this was an issue the Second
> District focused on, and because of
> conflicting evidence in the record. [FN]
>
> [FN] The Court notes that the probable cause
> affidavit in this case indicates that
> Defendant was arrested in 1995 and that
> "[t]hree cases were generated. . . ."
>
> Defendant testified that he was arrested on
> July 7, 1995 for sexual battery and lewd and
> lascivious acts against 3 victims, [BD], Amy
> and Jennifer Clark, Defendant's two nieces.
> Four years later, in March of 2000, Defendant
> was arrested for the sexual battery of [BD]
> which took place from 1992-1995, 1996-1999,

and for child neglect which took place from
1998-1999.  Defendant testified that he was
told by an officer [during the 1995 arrest]
that he was being arrested for all three
victims not just the nieces.

However, on cross examination the State
alleged that Defendant knew he was not
arrested for victimizing [BD] in 1995, and
that there were no allegations in 1995
concerning the sexual abuse of [BD].  In fact,
in 1995, [BD] was a witness for her father and
claimed that she was not sexually abused by
her father.  The State also introduced the
probable cause affidavits from two 1995 cases
as Exhibits 4 and 5.

In support of the allegations, the State
called Sherry McAbee, the Director of Central
Records and Warrants, and showed her State's
Exhibit #1, which was a "face sheet" for a
criminal investigation for Defendant's 1995
case.  It indicated that Defendant was
arrested for an offense against Amy Clark.
The witness was also shown State's Exhibit #2,
a "clearance form" for a sexual battery arrest
concerning Any Clark in 1995.  The witness
further testified that on the State's request,
she checked the records, and that there were
no records generated in 1995 that show that
Defendant was arrested on July 6 or 7 of 1995
for a crime against [BD].  Evidently, there
was a misstatement in the 1999 probable cause
affidavit for this case concerning the arrest
in 1995, which listed [BD] as a victim in 1995.
Therefore, Defendant's allegation that he was
arrested twice for sexual offenses against
[BD] is conclusively refuted by the record.

(Ex. 11 at ¶¶ 1-4) (emphasis in original).  Florida's Second

District Court of Appeal affirmed the post-conviction court's

denial of this claim (Ex. 12).

Petitioner now asserts that the post-conviction court

unreasonably determined the facts in light of the evidence

presented during the evidentiary hearing (Doc. 7 at 7).
Specifically, in his reply, Petitioner argues that "the post-
conviction court's assertion that the Petitioner knew he had not
been arrested for victimizing BD in 1995 based on the Petitioner's
answers during cross-examination is incorrect." (Doc. 26 at 17).[5]
Petitioner also claims that the post-conviction court erred by
relying on the testimony of Records Director Sherry McAbee to
conclude that Petitioner had not been arrested in 1995 for the
sexual battery of BD. Id. at 17-18. Petitioner argues that
McAbee's failure to find any arrest record does not necessarily
mean that Petitioner was not arrested in 1995 for sexually
molesting his daughter — particularly given that the 1999 probable
cause affidavit from the instant crime suggests otherwise. Id. at
18. To the extent Petitioner believes that Respondent has the
burden of disproving his entitlement to habeas relief, he is
mistaken.

The post-conviction court made two specific factual findings:
(1) that the 1999 probable cause affidavit (indicating that
Petitioner was arrested for molesting BD in 1995) was wrong; and
(2) Petitioner was not arrested for a crime against BD in 1995.
In a habeas proceeding, a factual determination made by a State

---

[5] Because it is clear that the state court never stated that
Petitioner "knew" he was not arrested for molesting BD in 1995,
this allegation will not be further addressed by the Court.

court shall be presumed correct unless the petitioner presents clear and convincing evidence otherwise. 28 U.S.C. § 2254(e)(1). A state-court factual determination is not unreasonable merely because the federal habeas court (or in this case, the Petitioner) would have reached a different conclusion in the first instance. Wood v. Allen, 558 U.S. 290, 301 (2010).

The post-conviction court heard testimony from the Lee County director for central records and warrants, Sherry McAbee. She testified that she had been asked to search all 1995 records for Petitioner's arrest for any offense involving BD and that she had found none (Ex. 10 at 55-56). Petitioner's collateral counsel cross-examined McAbee on this issue:

> Q.   When a case number is generated, does that indicate an arrest?
>
> A.   Not necessarily.
>
> Q.   Okay.  If there was a case number in 1995, would the Lee County Sheriff's Department have a record on that?
>
> A.   Depending on the type of case and the retention guidelines for the State, yes.
>
> Q.   And if there was an arrest in 1995, would Lee County Sheriff's – in the Lee County Sheriff's Department, would there be records about an arrest?
>
> A.   Same answer, depending on retention guidelines set forth by the State.
>
> Q.   Do you know what the retention guidelines set forth by the state?

> A.    Well, it's different for various type[s]
>       of cases.  Capital felonies will be kept
>       for at least fifty years to the lifetime
>       of the defendant.
>
> Q.    Okay.  So if Mr. Duffey was arrested in
>       1995 for a capital offense, Lee County
>       Sheriff's Department would have a record
>       of that?
>
> A.    Yes, we would.
>
> Q.    And it's your testimony here today that
>       there was no such record.
>
> A.    I've got a record of an arrest but not
>       with [BD] as the victim.

(Ex. 10 at 58-59).  On re-direct, the State clarified that McAbee had "checked for all arrests for Mr. Duffey for 1995." Id. at 61. Given that there is no 1995 arrest record for a sex crime against BD, and given that BD testified in Petitioner's 1995 trial as a defense witness (Ex. 10 at 33), the post-conviction court's conclusion that "Defendant's allegation that he was arrested twice for sexual offenses against [BD] is conclusively refuted by the record" was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Because there is no record that Petitioner was arrested in 1995 for any crime against BD, reasonable counsel could have concluded that Florida's speedy trial rule was not implicated by Petitioner's 1999 arrest for crimes against this victim. Likewise, even had Counsel filed a speedy trial motion based upon

Petitioner's self-serving assertion of a 1995 arrest, the lack of an arrest record would have precluded relief on this ground. Petitioner fails to satisfy either <u>Strickland</u> ineffectiveness prong, and Claim One is denied on the merits.

## B.   Claim Two

Petitioner asserts that he was denied his constitutional right to a public trial and the effective assistance of counsel when the courtroom was partially closed during BD's testimony (Doc. 7 at 9).   Petitioner raised these claims on direct appeal and in his first Rule 3.850 motion (Ex. 4; Ex. 6).   The claims were rejected by both the appellate and post-conviction courts (Ex. 5; Ex. 8).   Petitioner now argues that, although Counsel did not object to the partial closing of the courtroom during the minor victim's testimony, the court erred under <u>Waller v. Georgia</u>, 467 U.S. 39 (1984) for not sua sponte making "findings adequate to support the finding of closure" (Doc. 7 at 10).[6]  Alternatively,

---

[6] In <u>Waller</u>, the Supreme Court considered the extent of an accused's right under the Sixth Amendment to insist upon a public trial.  Although the Court determined that a defendant's right to public trial is not absolute, there is a "presumption of openness." 467 U.S. at 45 (quoting <u>Press-Enterprise Co. v. Superior Court of Cal.</u>, 464 U.S. 501, 505 (1984)).   To overcome this presumption and justify closing the courtroom to the public during a criminal proceeding, four elements must be satisfied: (1) the party seeking to close the proceedings must advance an overriding interest that is likely to be prejudiced; (2) the closure must be no broader than necessary to protect that interest; (3) the trial court must consider reasonable alternatives to closing the proceeding; and (4) the trial court must make findings adequate to support the closure. <u>Waller</u>, 467 U.S. at 48.

Petitioner argues that Counsel was ineffective for failing to object to the partial closure. Id.  Neither of these claims justify habeas corpus relief.

First, Petitioner has advanced no clearly established Supreme Court case indicating that a state court is required to make Waller findings, in the absence of an objection, to the partial closing of a courtroom during a minor child's testimony.  To the contrary, the Waller court specifically held that "under the Sixth Amendment[,] any closure of a suppression hearing *over the objections of the accused* must meet the tests set out in Press-Enterprise and its predecessors." 467 U.S. at 47 (emphasis added). Moreover, Florida appellate courts will not consider the merits of a Sixth Amendment public trial claim on direct appeal if no objection was made at the trial level. See Jones v. State, 883 So. 2d 369 (Fla. 3d DCA 2004) ("A proper contemporaneous objection in the trial court is necessary to raise the need for Waller findings in connection with a request for partial closure of the courtroom under section 918.16, Florida Statutes."); see also Levine v. United States, 362 U.S. 610, 619 (1960) (failure to object to closing of courtroom is waiver of right to public trial). Accordingly, the appellate court's denial of this claim on direct appeal was neither contrary to, nor an unreasonable application of, Waller.

Petitioner fares no better with his ineffective assistance claim.  The post-conviction court rejected this claim on the basis that Petitioner failed to show how the outcome of his trial would have differed had Counsel objected to the partial closure (Ex. 1 at ¶ 5).  Florida's Second District Court of Appeal affirmed (Ex. 8).  Petitioner fails to demonstrate that this conclusion was objectively unreasonable.

When, as here, we consider defective performance at the guilt stage, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Strickland, 466 U.S. at 694.[7]  In Purvis v. Crosby, 451 F.3d 734 (11th Cir. 2006), the Eleventh Circuit addressed a similar issue as raised in Claim Two.  Purvis contended that he suffered prejudice from defense counsel's failure to object to the partial closure of the courtroom during a minor victim's testimony regarding sexual abuse.  Id.  The court concluded that Purvis' failure to affirmatively demonstrate prejudice was fatal to his ineffective assistance claim:

> Purvis cannot show that an objection from his
> counsel would have caused the factfinder to
> have a reasonable doubt about his guilt.  If

_____

[7] Petitioner's reply argument that an objection by Counsel would have preserved the issue for appeal and led to a reversal of his conviction is flawed because it focuses on the outcome of the appeal, not the trial.  When a claimed error of counsel occurs at the guilt stage of a trial, prejudice is gauged against the outcome of the trial, not the appeal.  Strickland, 466 U.S. at 694-95; Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006).

counsel had objected in a timely fashion and
had persuaded the trial judge not to partially
close the courtroom, there is no reason to
believe that would have changed the victim's
testimony in a way which would have created a
reasonable doubt in the jury's mind. The
victim could just as well have been a more
sympathetic or credible witness if forced to
testify publicly. We do not know, and when we
do not know the party with the burden loses,
and here that party is Purvis.

Id. at 738-39.  Likewise, Petitioner's instant argument that, had

BD been forced to testify in public, she "would have been compelled

to concede that her accusations were false and other witnesses

hearing the victim's accusation could have come forward with

exculpatory evidence to prove that the victim's allegations were

false" is not evidence of prejudice.   Rather, it is mere

speculation -- speculation that non-witness members of the public

were interested in, but forbidden from, attending the trial during

BD's testimony; that BD's testimony would have changed as a result

of the audience; and that the jury would have reached a different

verdict as a result of BD's altered testimony. Speculation does not

establish prejudice. See Strickland, 466 U.S. at 693 (instructing

that a habeas petitioner must "affirmatively prove prejudice"); Bible

v. Ryan, 571 F.3d 860, 871 (9th Cir. 2009), (2010) (speculation

insufficient to show Strickland prejudice).   This Court does not

know what would have happened had BD testified publicly.

Accordingly, Petitioner has not met his burden of demonstrating

Strickland prejudice, and his ineffectiveness claim is denied
pursuant to 28 U.S.C. § 2254.

## C.   Claim Three

Petitioner asserts that Counsel was ineffective for failing
to request that the trial court give the Williams rule[8] jury
instruction upon the admission of Williams rule evidence (Doc. 7
at 13).  The "evidence" to which Petitioner refers is set forth
in the "Williams Rule Notice" filed by the state prior to trial
(Doc. 1 at Exhibit B).  The notice indicated that the state
intended to offer factual evidence of the following at trial:

- That Petitioner possessed, cultivated, and/or
  distributed cannabis and/or marijuana in the presence of
  BD while she was living with him;

- That Petitioner used or possessed drug paraphernalia in
  the presence of BD while she was living with him;

- That Petitioner used or possessed cocaine in the
  presence of BD while she was living with him;

- That Petitioner possessed in plain view throughout his
  home obscene materials and/or pornography, including but
  not limited to videos, magazines, and sexual aides in
  the presence of his daughter;

- That Petitioner shot BD in the leg with a BB gun while
  she lived with him;[9] and

---

[8] Williams v. State, 110 So. 2d 654 (Fla. 1959) (relevant
evidence of collateral crimes is admissible at a jury trial when
it does not go to prove the bad character or criminal propensity
of the defendant but is used to show motive, intent, knowledge,
modus operandi, or lack of mistake).

[9] The evidence of the BB injury and Petitioner's cocaine use
does not appear to have been admitted at Petitioner's trial. See

- That Petitioner struck BD on several occasions to prevent her from disclosing his ongoing sexual abuse.

Id.  Petitioner raised this claim in his Rule 3.850 motion (Ex. 6).  After holding an evidentiary hearing, at which Counsel testified he could not recall why he did not request a limiting instruction, the post-conviction court denied the claim on the basis that Petitioner could not show prejudice from Counsel's failure to do so (Ex. 11 at ¶ 19).  The appellate court affirmed (Ex. 12).

Under Florida law, a defendant is entitled to a cautionary instruction when evidence of uncharged crimes, wrongs, or acts is introduced under Fla. Stat. § 90.404(2).[10]  However, evidence that

---

T. at 205 (state agrees to caution BD not to talk about the BB gun). Rather, Petitioner now argues that the jury was permitted to hear evidence "regarding Petitioner's possession and cultivation of marijuana and possession of drug paraphernalia in the presence of BD, the Petitioner's possession of obscene pornographic videos, magazines, and sexual aides in the presence of BD, and of Petitioner's striking BD on several occasions to prevent her from disclosing the ongoing sexual abuse." (Doc. 26 at 23).

[10] Florida Statute § 90.404(2)(d)(2) provides:

> When the evidence is admitted, the court shall, if requested, charge the jury on the limited purpose for which the evidence is received and is to be considered. After the close of the evidence, the jury shall be instructed on the limited purpose for which the evidence was received and that the defendant cannot be convicted for a charge not included in the indictment or information.

is inextricably intertwined with the crime charged is not true
"Williams rule" evidence. See Griffin v. State, 639 So. 2d 966,
968 (Fla. 1994) ("[E]vidence of uncharged crimes which are
inseparable from the crime charged, or evidence which is
inextricably intertwined with the crime charged, is not Williams
rule evidence.").

Reasonable defense counsel could have concluded that the
evidence of Petitioner's drug and pornography use in front of his
minor child was admissible under Florida Statute § 90.402, not as
Williams rule evidence, but because it was a relevant and
inseparable part of the acts at issue; that is, Petitioner's
neglect of BD.[11]   Reasonable counsel could have concluded that the

---

(2000).

[11] At the time of Petitioner's arrest, "neglect of a child"
was defined as:

>    1.   A caregiver's failure or omission to
>         provide a child with the care,
>         supervision, and services necessary to
>         maintain the child's physical and mental
>         health, including, but not limited to,
>         food, nutrition, clothing, shelter,
>         supervision, medicine, and medical
>         services that a prudent person would
>         consider essential for the well-being of
>         the child; or
>
>    2.   A caregiver's failure to make a
>         reasonable effort to protect a child from
>         abuse, neglect, or exploitation by
>         another person.

evidence of Petitioner's physical abuse and threats to BD was necessary to adequately explain why BD's stories were inconsistent and thus were inextricably intertwined with the offenses. See England v. State, 940 So. 2d 389 (Fla. 2006) (defendant's statement that he would kill an individual if he got him into trouble was admissible because it showed the defendant's desire to evade prosecution); Heath v. State, 648 So. 2d 660, 664 (Fla. 1994) (evidence admissible regarding defendant's plan to escape and kill two witnesses because they were the only people who could tie him to a murder). Because reasonable counsel could have concluded that the evidence at issue was not true Williams rule evidence, it was not deficient performance for Counsel to decide against asking for a limiting instruction.[12] Therefore, Petitioner fails to show

---

> Neglect of a child may be based on repeated conduct or on a single incident or omission that results in, or could reasonably be expected to result in, serious physical or mental injury, or a substantial risk of death, to a child.

Fla. Stat. § 827.03(3)(a) (2000).

[12] Because this Court's inquiry is an objective one, Counsel's *actual* motivation is irrelevant on federal habeas review. See Castillo v. Sec'y, Fla. Dep't of Corr., 722 F.3d 1281, 1285 n.2 (11th Cir. 2013) ("The relevant question under Strickland's performance prong, which calls for an objective inquiry, is whether any reasonable lawyer could have elected not to object for strategic or tactical reasons, even if the actual defense counsel was not subjectively motivated by those reasons.").

deficient performance with respect to Counsel's failure to request the instruction.

Moreover, even if the evidence was true "Williams rule" evidence (and thus entitled to an instruction), Petitioner fails to show a reasonable probability of acquittal had the jury been instructed that they could not consider the evidence as substantive evidence of guilt and that Petitioner was not on trial for the other acts. BD testified that her father began touching her private parts with his penis when she was nine years old and began having sexual intercourse with her twice a day between the ages of twelve and fifteen (T. at 279-281, 283). She testified that he threatened her not to tell anybody about the abuse. Id. at 281. Petitioner would punish her by performing anal sex on her. Id. at 285. He also used sex toys and put them inside her vagina. Id. at 285-86. When BD tried to tell someone, Petitioner told her that when he got out of jail, he would kill her. Id. at 290. She testified that Petitioner made her shave her pubic hair into a strip and told her to take birth control pills. Id. at 308-09. She did not attend school regularly and was receiving F's in all her classes, but her father would not help her with homework. Id. at 306, 310. BD and her father would watch pornographic movies together. Id. at 308. DNA from Petitioner's sperm cells was found mixed with BD's DNA on a bedsheet, a blanket, a vibrator, and a dildo (T. at 650-58). Nobody else's DNA was found on the items.

Id. at 657.   Given the substantial amount of evidence of Petitioner's guilt, the state courts' determination that Petitioner was not prejudiced by the failure of a limiting instruction was neither contrary to Strickland nor based upon an unreasonable determination of the facts.

Petitioner has satisfied neither Strickland ineffectiveness prong, and Claim Three is denied pursuant to 28 U.S.C. § 2254(d).

**D.   Claim Four**

Petitioner asserts that Counsel was ineffective for failing to call Paul Eason as a defense witness at trial (Doc. 7 at 18). He asserts that Eason would have testified that BD threatened to have her father arrested for raping her, but that when he (Eason) confronted her with the accusation, BD denied that Petitioner had raped her. Id. at 19.   Petitioner raised this claim in his Rule 3.850 motion, and after an evidentiary hearing, the post-conviction court denied it (Ex. 11).   The post-conviction court summarized the facts surrounding this claim as follows:

> Defendant did not call Paul Eason to testify
> [at trial].   Eason was lifelong friend and
> also worked with Defendant at the time of
> Defendant's arrest in this case.   Eason
> testified [at the evidentiary hearing] that
> [BD] was uncontrollable.   After one incident
> of skipping school, Defendant threatened to
> send [BD] to boot camp.   Eason testified that
> [BD] threatened to accuse Defendant of sexual
> abuse if he tried to send her to boot camp.
> Eason further testified that [BD] told him she
> never had sexual contact with her father.
> Eason was baffled as to why the defense did

not call him to testify at trial, and that he
contacted the defense to testify at the
sentencing hearing after hearing that
Defendant was convicted.  Defendant also
testified that he informed both attorneys
about Eason's knowledge of the situation
between Defendant and [BD].   But neither
attorney called Eason to testify at trial.

Miskovich testified that he remembered Eason,
and that after recently reading [BD's]
deposition his memory was refreshed further.
Miskovich testified that he didn't feel that
Eason's testimony was valuable, because he
could not dispute the actual charges.  The
defense's strategy in this case was to
discredit the victim, [BD], by showing that
she constantly changed her story.  [BD]
admitted as much at trial.

Miskovich also testified that he spoke to at
least five people from Defendant's witness
list and called three to testify.  He may have
called more witnesses but he didn't have time
to investigate because Defendant invoked his
speedy trial rights.  Also when the DNA
evidence came in, it showed a commingling of
Defendant's DNA and [BD's] DNA on a sex toy
and on some bed sheets.

(Ex. 11 at ¶¶ 8-10).  The post-conviction court denied the claim

on the ground that "counsel was not ineffective and [] based upon

the evidence in this case, Defendant was not prejudiced by any

alleged omissions of counsel." Id. at ¶ 20.  Florida's Second

District Court of Appeal affirmed (Ex. 12).  Petitioner argues

that there was "no reasonable strategic reason for counsel not to

call Mr. Eason to testify at trial.  Even if BD admitted to lying

several times, Mr. Eason's testimony that BD denied that any sexual

battery had ever occurred went to the heart of the case and to

what the State had to prove for the Petitioner's conviction for two counts of Sexual Battery." (Doc. 26 at 30).  Petitioner urges that the state courts "applied Strickland to the facts of this case in an objectively unreasonable manner[.]" Id. at 32.  This Court does not agree.

At the evidentiary hearing on Petitioner's Rule 3.850 motion, Eason testified that he was Petitioner's best friend and had known him since grade school (Ex. 10 at 13).  He stated that, on the day at issue, he saw BD cutting school.  He chased her down the block and took her back to her father's place of work. Id. at 9.  BD stayed there until the end of the day, and Eason went home with Petitioner and BD because he was concerned for BD. Id.  When Petitioner told BD that he was going to send her to boot camp, she responded that she would run away and have Petitioner arrested for raping her. Id. at 9.  Eason took her aside, and testified:

> And I – I told her, I says, you can't you know,
> that's not right.  You can't you can't just
> do that.  You're wrong, you're needing some
> help, and you need to be put in your place.
> And I told her, I said, you know, you did this
> to yourself.  And she said that she would run
> away and tell the police that he had raped
> her, and knowing that it was – she – you know,
> it didn't happen because I've – I was – I was
> relentless with her.

Id. at 10.  Eason then testified that BD told him that her father never touched her. Id. at 11.  On cross examination, Eason admitted that he chastised BD when she made her allegation against

Petitioner because he (Eason) was "very upset." Id. at 13.   When asked whether he was aware that BD had been punished by Petitioner when she had informed somebody else about the molestation on another occasion, Eason admitted that "[BD] was punished quite a bit, to be honest with you.  She was very out of control." Id. at 13-14.

At trial the gravamen of the defense strategy was that BD was an unreliable witness.  In fact, BD admitted lying under oath on other occasions (T. at 340-50, 394).  Petitioner's former girlfriend, Nancy Barber, testified that BD told her about the sexual abuse, but that after Barber told Petitioner about BD's allegations, BD recanted them. Id. at 722.  BD's former friend, Amanda, testified that BD told her that Petitioner would come into her room at night and "mess" with her. Id. at 770.  Amanda testified that she expressed disbelief, because Petitioner "would never do nothing like that," and thereafter, BD told Amanda that she was kidding. Id. at 770.

Eason's testimony at the evidentiary hearing revealed nothing that was not presented at trial by other witnesses.  Given that the defense presented ample evidence that BD had a habit of accusing Petitioner of sexually molesting her, and then recanting the accusation when faced with disbelief, Petitioner cannot demonstrate prejudice from Eason's absence. See Van Poyck v. Florida Dep't of Corrs., 290 F.3d 1318, 1324 n.7 (11th Cir. 2002)

("A petitioner cannot establish ineffective assistance by identifying additional evidence that could have been presented when that evidence is merely cumulative."); Lukehart v. State, 70 So. 3d 503, 522 (Fla. 2011) ("Trial counsel cannot be deemed ineffective for failing to present testimony from the evidentiary hearing that was virtually identical to the testimony presented during the penalty phase."); Henyard v. State, 883 So. 2d 753, 759-61 (Fla. 2004) (concluding that counsel was not ineffective where the evidentiary hearing testimony was cumulative of the testimony at the penalty phase).

Moreover, given the nature of Eason's evidentiary testimony that: (1) he was Petitioner's best friend; (2) he "chased" BD down the street when he noticed her skipping school; (3) he was very upset with BD when she made her accusations against her father and "relentlessly" chastised her as a result of her statements; and (4) BD was in trouble with her father quite frequently, reasonable counsel could have strategically concluded that Eason's testimony actually made BD look vulnerable and illustrated why a young teen might immediately recant her accusations in the face of hostility from two grown men. See Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.")(internal quotation omitted).

Petitioner has demonstrated neither ineffective assistance nor resulting prejudice from Counsel's failure to call Eason as a defense witness. The state courts' rejection of Claim Four was neither contrary to, nor an unreasonable application of, Strickland. Claim Four is denied pursuant to 28 U.S.C. § 2254(d).

## E.   Claim Five

Petitioner asserts that Counsel was ineffective for failing to move to sever the charges for trial (Doc. 7 at 22). Specifically, he asserts that the offense dates of count one, had no relationship to the offense dates of counts two and three. Id. at 24. He also asserts that the evidence admitted to support the child neglect charge bolstered the sexual battery and activity offenses in counts one and two and would likely not have been admitted if the sexual battery and activity accounts had been severed. Id. Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court denied it on the ground that Counsel had considered moving to sever the counts and strategically, decided against it (Ex. 11 at ¶ 12). Florida's Second District Court of Appeal affirmed (Ex. 12). A review of the record supports the state courts' conclusions.

At the evidentiary hearing, Counsel testified that he considered filing a motion to sever the charges, but thought that the evidence showing the pornography and the drug paraphernalia might come in anyway as part of the sex charges (Ex. 10 at 69).

He also stated that his defense strategy was focused on BD's untruthfulness, and if he could convince the jury to find her not credible, Petitioner would then be acquitted on all the charges. Id. at 79.   The record thus supports the state post-conviction court's findings, affirmed on appeal, that the decision not to seek severance of the charges constituted a reasonable trial strategy. See, e.g., Pardo v. Sec'y, Fla. Dep't of Corr., 587 F.3d 1093, 1103-04 (11th Cir. 2009) (district court correctly denied ground alleging ineffective assistance for withdrawing motion to sever where record supported state court's factual finding that severance decision was strategic).  Moreover, given BD's testimony — which the jury obviously found credible — and the DNA evidence showing the comingling of Petitioner's sperm with BD's DNA, even had the neglect charge been severed, and even had the photographs of Petitioner's drug and pornography not been admitted at his sex abuse trial, there is not a reasonable probability that Petitioner would have been acquitted on the sex charges.

The Florida courts did not unreasonably apply Strickland when it concluded that Petitioner failed to show that Counsel's performance was outside the wide range of reasonable professional assistance.  Claim Two is denied pursuant to 28 U.S.C. § 2254(d).

### F.  Claim Six

Petitioner asserts that the evidence was insufficient to convict him of child neglect (Doc. 7 at 27).  Specifically, he

asserts that "[t]he evidence presented at trial against Petitioner was that he hit his daughter, the victim, a couple of times and shot her in her leg with a B-B gun.  None of which resulted in any serious physical or mental injury of a substantial risk of death to the victim." Id. at 29.  Petitioner also argues that, although the state presented evidence that Petitioner used marijuana and cocaine in the presence of his daughter, "[t]here was no evidence that Petitioner induced or solicited his daughter to use any of those or that any of those drugs resulted in any type of physical or mental injury to the victim." Id.  Finally, Petitioner argues that, although the state presented evidence that Petitioner "had in plain view throughout his home pornography, adult videos and magazines and sexual toys.  None of those items were illegal. There was no evidence that any of these items resulted in any type of serious physical or mental injury to the victim." Id.

Respondent asserts that this claim is unexhausted because, although Petitioner raised it on direct appeal, he did so in terms of state law only (Doc. 22 at 26-27).  Indeed, a review of Petitioner's brief on direct appeal indicates that he argued the merits only as a claim of insufficient evidence under Florida law (Ex. 4).  Specifically, Petitioner argued that the nature of the evidence presented against him was more properly directed towards

a charge of child abuse (with which Petitioner was not charged) than child neglect. Id. at 20.[13]

Before a federal court may grant habeas relief, the petitioner must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b); Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.").  The prohibition against raising an unexhausted claim in federal court extends to both the legal theory of relief and to the specific factual contention that supports relief. Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1344 (11th Cir. 2004). Petitioner's state law arguments presented on direct appeal leave the exhaustion requirement unsatisfied. Duncan, 513 U.S. at 365; Pearson v. Sec'y, Dep't of Corr., 273 F. App'x 847 (11th Cir. 2008) (claim unexhausted when petitioner cited exclusively to state cases, all of his substantive arguments addressed state law, and nothing in the argument alerted the state court to a federal due process claim).

---

[13] To the extent Petitioner now argues that the state courts' rejection of Claim One was based upon a misapplication of Florida law, the claim is not cognizable on habeas review. See Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law[.]").

Petitioner does not argue that he exhausted this claim in state court.  Rather, he urges that he was not required to do so because "the claim is not procedurally waived based on Martinez v. Ryan, 132 S. Ct. 1309 (2012), which allows the consideration of this claim on the merits by this Court because the issue is substantial and the Petitioner suffered prejudice." (Doc. 26 at 34).  Petitioner misunderstands the limits of Martinez; the Martinez ruling does not apply to the claim of trial court error Petitioner attempts to raise here.

In Martinez, the United States Supreme Court held that procedural default will not bar a federal habeas court from hearing substantial claims of ineffective assistance of counsel at trial if, in initial-review collateral proceedings, there was no counsel or counsel in that proceeding was ineffective.[14]  Martinez' equitable rule applies solely to ineffective assistance of trial counsel claims and has not been interpreted to excuse the procedural default of all claims not properly raised in state court. Martinez, 132 S. Ct. at 1315.  The Supreme Court explained:

> The rule of Coleman governs in all but the
> limited circumstances recognized here.  The
> holding in this case does not concern attorney
> errors in other kinds of proceedings,

_____

[14] In 2013, the Supreme Court confirmed that the Martinez ruling applied to prisoners who technically had the ability to bring their ineffective assistance claims on direct appeal of their conviction, but for all intents and purposes had to bring it in their first habeas petition. Trevino v. Thaler, 133 S. Ct. 1911, 1921 (2013).

> including appeals from initial-review
> collateral proceedings, second or successive
> collateral proceedings, and petitions for
> discretionary review in a State's appellate
> courts. It does not extend to attorney errors
> in any proceeding beyond the first occasion
> the State allows a prisoner to raise a claim
> of ineffective assistance at trial, even
> though that initial-review collateral
> proceeding may be deficient for other reasons.

Id. at 1320 (internal citations omitted); see also Gore v. Crews,

720 F.3d 811, 816 (11th Cir. 2013) ("By its own emphatic terms,

the Supreme Court's decision in Martinez is limited to claims of

ineffective assistance of trial counsel that are otherwise

procedurally barred due to the ineffective assistance of post-

conviction counsel."). Therefore, Petitioner cannot benefit from

the Supreme Court's holding in Martinez, and he must satisfy

Coleman's cause and prejudice standard before he would be entitled

to federal habeas corpus relief.

Petitioner does not demonstrate cause for not raising the

constitutional dimension of this claim in the state courts or

actual prejudice resulting from the errors of which he complains.

Nor does the actual innocence exception apply in this case. Claim

Six is dismissed as unexhausted and procedurally barred.

## G.   Claim Seven

Petitioner asserts that his first attorney, Joseph Cerino,

was ineffective for waiving Petitioner's speedy trial rights

without his consent (Doc. 7 at 31). Specifically, Petitioner

claims that he wrote a letter to Cerino on May 16, 2000, demanding that he not waive his speedy trial rights under Florida law, but that Cerino did so anyway on June 1, 2000. Id. at 32.  He states that the state was unable to locate the victim until October of 2000, and that, had Cerino not waived speedy trial, the state would have been compelled to dismiss the charges against him. Id. at 33. Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court denied it on the ground that Petitioner failed to show how he was prejudiced by Cerino's waiver (Ex. 11 at ¶ 5).  Florida's Second District Court of Appeal affirmed (Ex. 12).

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. In addition to a broad constitutional right to speedy trial under the Sixth Amendment, Florida law includes a specific procedural right to speedy trial, set forth in Fla. R. Crim. P. 3.191. State v. Naveira, 873 So. 2d 300, 308 (Fla. 2004); see also discussion supra Claim One. However, an attorney acting without consent from his client may waive his client's right to a speedy trial because "[s]cheduling matters are plainly among those [decisions] for which agreement by counsel generally controls." New York v. Hill, 528 U.S. 110, 115 (2000)(regarding waiver of the right to speedy trial in the Interstate Agreement on Detainers).  Moreover, under Florida law,

defense counsel may waive a criminal defendant's speedy trial rights without first consulting the defendant; may do so outside of the defendant's presence; and may even do so against the defendant's wishes. MacPhee v. State, 471 So. 2d 670, 671 (Fla. 2d DCA 1985) (noting that "a defense attorney may waive speedy trial on his client's behalf without consulting him and without his presence"). Accordingly, Cerino's performance was not deficient for waiving Petitioner's statutory right to a speedy trial without Petitioner's consent.

In addition, Petitioner cannot show prejudice because: (1) he has not presented evidence showing that Cerino would have been ready to go to trial within the speedy trial time; and (2) he merely speculates that, had Cerino not waived his speedy trial right, the state would have been unable to procure BD as a witness for trial. Based on the above, the state court did not err when it concluded that Cerino was not ineffective under Strickland for waiving Petitioner's speedy trial rights. Claim Seven is denied pursuant to 28 U.S.C. § 2254(d).

**H.   Claim Eight**

Petitioner claims that fundamental error occurred when the jury returned a guilty verdict for an offense that was not charged in the charging document (Doc. 7 at 35). Specifically, Petitioner asserts that in count one of the information, he was charged with sexual battery upon a person less than twelve years of age by a

person over the age of eighteen. Id.  However, the jury's verdict

form and the oral pronouncement of the trial court reflect that

Petitioner was convicted in count one for the crime of sexual

activity with a person less than twelve years of age by a person

over the age of eighteen. Id.  Presumably, Petitioner believes

that the inclusion of the term "sexual activity" instead of "sexual

battery" on the verdict form indicates that the jury convicted him

of a different crime than that of which he was charged.[15]

Petitioner raised this claim in his second Rule 3.850 motion,

and the post-conviction court denied the claim on both procedural

and substantive grounds:

---

[15] In counts one and two of the information, Petitioner was
charged as follows:

> Between October 02, 1992 and October 01, 1995,
> in Lee County Florida, being eighteen years or
> older, did unlawfully commit a sexual battery
> upon B.D., a child less than 12 years of age,
> by placing his penis in union with her vagina
> and/or anus, or by penetrating her vagina
> and/or anus with his penis contrary to Florida
> Statue 794.011(2).

> Between April 15, 1996 and March 25, 1999 in
> Lee County Florida, did unlawfully engage in
> sexual activity with B.D., a child twelve
> years of age or older, but less than eighteen
> years of age, and at the time of such sexual
> activity, said defendant was in a position of
> familial or custodial authority to said child,
> contrary to Florida Statute 794.011(8)(B).

(Ex. 1).

Defendant alleges that fundamental error occurred when the jury returned a guilty verdict for an offense that Defendant was not charged with and this fundamental error resulted in a manifest injustice if not corrected.       As     the     State     contends, Defendant's allegations are without merit, successive, untimely and an abuse of process. There is no reason why this issue could not have been raised in Defendant's previous, timely rule 3.850 motion.  Even if there was a discrepancy between the jury verdict form and the written jury instructions, the written jury instructions provided to the jury were correct and listed Count 1 as "Sexual Battery Upon a Child Less Than 12 Years of Age." Therefore, Defendant cannot show how he was prejudiced.

Furthermore, Defendant's claim that he was charged and tried for an offense that was no longer an offense is unsupported by law.  At the time Defendant committed the offenses, it was, in fact, a first degree felony under Fla. Stat. § 794.011(8)(b) for a person in a position of familial authority to engage in any act which constitutes sexual battery with a person 12 years of age or older but less than 18 years of age.   There is nothing improper about summarily describing this crime as "sexual activity with a child." See, e.g., Morra v. State, 742 So. 2d 815 (Fla. 5th DCA 1999).   As such, Defendant has failed to demonstrate how counsel could have reasonably argued that sexual activity with a child as charged under Fla. Stat. § 794.011(8)(b) is not a criminal offense.[16]  Because Defendant is unable to show "fundamental error" his allegation of a "manifest injustice" also must fail.

---

[16] It is unclear why the post-conviction court included the verbiage regarding ineffective assistance of counsel.   There is no indication that Petitioner raised this as an ineffective assistance claim.

(Ex. 14 at ¶¶ 4-5) (internal citation to the record omitted).
Florida's Second District Court of Appeal affirmed the post-
conviction court's denial of this claim (Ex. 15).  Because this
claim fails on the merits, the Court will not address the post-
conviction court's and Respondent's argument that it was not
properly exhausted in state court. See 28 U.S.C. § 2254(b)(2) ("An
application for a writ of habeas corpus may be denied on the
merits, notwithstanding the failure of the applicant to exhaust
the remedies available in the courts of the State.").

    The trial court clearly explained during its charge to the
jury that Petitioner could not be found guilty of sexual battery
unless "Phillip Duffey committed an act upon BD in which the sexual
organ of Phillip Duffey penetrated or had union with the anus or
vagina of [BD]." (T. at 903).  This instruction was also included
in the written instructions provided to the jury (Ex. 14 at Exhibit
One).  Therefore, the jury knew the precise nature of the sexual
activity necessary to convict Petitioner of sexual battery.
Petitioner has not directed this Court to any clearly established
federal law showing that it is unconstitutional for a verdict form
to summarize the conduct necessary to convict a defendant or that
a verdict form must track the identical language as the oral and
written jury instructions.  The absence of clearly established
Supreme Court law on this issue is fatal to this claim. See 28
U.S.C. § 2254(d)(1); Musladin, 549 U.S. at 77(noting that a state

court cannot be said to have unreasonably applied clearly established Federal law on an issue if the Supreme Court had not determined the federal law at issue). Moreover, the lower federal courts that have addressed the issue have generally held that a verdict need only "be reasonably capable of an interpretation that would allow the jury to address all factual issues essential to the judgment." United States v. Riccio, 529 F.3d 40, 47 (1st Cir. 2008). It is simply not necessary for the trial court to reiterate all the elements of a crime in a verdict form if they were properly set forth in the jury instructions. United States v. Brown, 669 F.3d 10, 31 (5th Cir. 2012). Petitioner has not shown how the verdict form was so defective that it did not allow the jury to address all the factual issues essential to their judgment.

Finally, even if constitutional error is found in a habeas proceeding, it is still subject to a harmless error analysis under Brecht v. Abrahamson, 507 U.S. 619 (1993). "The test . . . is whether the error had substantial and injurious effect or influence in determining the jury's verdict. Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice." Brecht, 507 U.S. at 637 (internal citations and quotation marks omitted). This Court concludes that, even if the verdict form's use of the words "sexual activity" instead of

"sexual battery" was constitutionally infirm (a finding not made by this Court), the jury would not have reached a different verdict. In the instant case, the definitions of the conduct necessary to constitute "sexual battery" and "sexual activity" were identical – they were described by the trial court as an act "in which the sexual organ of Phillip Duffey penetrated or had union with the anus or vagina of [BD]." (T. at 903 and 905). The accordant definitions of sexual battery and sexual activity were also provided as part of the written jury instructions (Ex. 14).[17] Because the definition of the activity necessary to convict Petitioner of sexual battery was identical to the activity necessary to convict Petitioner of sexual activity, the jury did not convict Petitioner of a different crime than he committed. Accordingly, Petitioner fails to demonstrate, in light of the entire jury instructions, that the verdict form had substantial and injurious effect or influence in determining the jury's verdict. Consequently, even if Claim Eight presented a constitutional issue, it warrants no federal habeas relief.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

---

[17] The substantive difference between count one (sexual battery) and count two (sexual activity) was based upon the victim's age at the time of the offenses.

## IX.  Certificate of Appealability Pursuant to 28 U.C.S. § 2253(c)(1)[18]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he may not appeal *in forma pauperis*.

Therefore, it is now **ORDERED AND ADJUDGED**:

---

[18] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether he is entitled to a certificate of appealability.

1.     The  Florida  Attorney  General  is  dismissed  from  this action.

2.     Claim  Six  of  Petitioner's  28  U.S.C.  §  2254  petition  is dismissed  as  unexhausted.    The  remaining  claims  in  the  petition are **DENIED**.

3.     Petitioner  is  **DENIED**  a  certificate  of  appealability.

4.     The  **Clerk of Court**  is  directed  to  terminate  any  pending motions,  enter  judgment  accordingly,  and  close  this  case.

**DONE**  and  **ORDERED**  in  Fort  Myers,  Florida  on  this  ___9th___  day of  August,  2016.

 

 

_____
JOHN  E.  STEELE
SENIOR  UNITED  STATES  DISTRICT  JUDGE

SA: OrlP-4
Copies: Phillip Warren Duffey
Counsel of Record